Last case set for oral argument this morning, it was this morning, was Shrempf, Kelly, Napp & Darr v. Carpenters' Health & Welfare Trust Fund. I'm Jim Robertson. I represent Carpenters' Health & Welfare Trust Fund of St. Louis and the trustees of that fund, they're the appellants in this matter. To avoid repeating a lot of unnecessary words, I'm going to refer to them as either the fund or the plan, depending upon the context. This is an appeal from a summary judgment that was granted in favor of the plaintiff appellees, Shrempf, Kelly, Darr & Napp, and I'll call them Darr, in order to keep the words from overwhelming the argument. The case has its beginnings with an injury to a James Miller who was a covered individual under the plan because of his work in covered employment as a carpenter. Mr. Miller hired Darr to represent him to bring an action to recover damages for the personal injuries that he suffered. About that same time, the fund paid the medical bills for Mr. Miller's injuries in the approximate amount of $90,000 without knowing about the fact that there was a potential third-party liability in the mix of the facts in this case. And that's material because the plan document specifically excludes coverage for injuries or sickness for which a third party may be liable, unless the covered individual fully complies with the separation and reimbursement provisions of the plan. And that's the essence of where our dispute begins. The plan provides from a third-party recovery that the covered individual is to make up to 100% reimbursement of the medical benefits paid, not to exceed the amount of the recovery, of course, and that the plan does not pay attorney's fees, that attorney's fees are the sole responsibility of the covered individual. In the lawsuit, there was a $500,000 settlement. In round numbers, that meant that Darr was entitled to $170,000 for a fee, that the plan was entitled to $90,000 in reimbursement, and that Mr. Miller would walk away with $240,000. Instead of that, Mr. Darr tendered $90,000 to the fund, $60,000 in one check, $30,000 in another, and then said, but now you have to give the $30,000 back because you owe me attorney's fees under the Illinois Common Fund Doctrine. The plan said, wait a minute, you guys signed the segregation reimbursement agreement, saying you play ball by the terms of the plan document, and in any event, the Common Fund Doctrine is preempted by ERISA because it relates to this plan and it changes the benefit structure. It will shift the burden of the fees from the Millers to the plan in the amount of $30,000, and that's exactly what will happen if this stands up. The trial court granted summary judgment in favor of Darr on the reasoning that the Common Fund Doctrine in Illinois is not preempted by ERISA because Darr was not a party to the plan. I don't fully understand the logic of that, but be that as it may, Darr's case… Why do you not fully understand the logic of that? Because preemption would not be an issue if Darr were a party to the plan. It would be a contract case, Your Honor. But Darr was clearly not a covered beneficiary of the plan. That is true. So he can't be a party, as you would put it, to the plan. That's correct. Let me put it a different way. The preemption force of ERISA doesn't depend upon whether Mr. Darr is a party to the contract or not. ERISA preempts state law as it relates to the plan, not whether someone's a party to the contract or the plan document or not. That's what the case law says. Okay. So, in any event, Darr's case rests essentially on the case of Bishop v. Burgard. He's briefed it. I'm sure you're aware of it. I'm aware of it also. Bishop v. Burgard is a decision of the Illinois Supreme Court that said that the Common Fund Doctrine does not… because it is not sufficiently connected to the plan. It doesn't have an impact on it, the statute of limitations. At the same time, the Bishop Court acknowledged that there was a split in the federal circuits on this question and that they need not follow the precedent of particular federal circuits where the Supreme Court of the United States has not ruled on the precise question. There's uncertainty among the federal courts of appeals, and we believe the case has been wrongly decided. That's what Bishop says. In 2013, the United States Supreme Court decided U.S. Airways v. McCutcheon, which squarely presented the question of whether equitable doctrines, such as the Common Fund or the Maypole, could be applied to contravene the written terms of an ERISA plan, and the Supreme Court said it cannot. Well, in U.S. Airways, the plan was silent on whether there could be attorney fees. I'll address that. So there was a big difference in… I'll address that. That's why U.S. Airways went on to say because the plan is silent on the issue of attorney's fees, we're going to use federal common law and we're going to apply the Common Fund doctrine. And it took a default position. Default position. And in the Eighth Circuit, in the Seventh Circuit, so far as I know, everywhere, if the plan document doesn't say we don't pay fees, that would be the result that you would get. But the U.S. Airways decision did not address whether or not the cause of action belonged to the attorney or the client. Would you agree with that? I would agree that that's true, but I also think it's irrelevant if ERISA preempts a state law as it relates to the plan. It preempts a state law as it relates to the plan. I don't think it matters who asserts the claim. The case law from the Supreme Court, I think it's Aetna v. Davila, talks about the fact that ERISA limits the universe of plaintiffs, but it does not limit the universe of people who may be defendants. Sorry, that's Harris Trust, and it's in the reply brief. The point being that the preemptive force of this statute applies to state law as it relates to the plan. It doesn't matter who's asserting the plan. There are restrictions on who can bring a claim under 1132, but that's a different issue. In any event, at the time this case was in the Seventh Circuit, Darr pointed out to the court a case called CGI Technologies v. Rose, which applied an equitable doctrine to modify the terms of the plan. It came out of the Ninth Circuit, and CGI v. Rose and U.S. Airways v. McCutcheon are the two cases that did apply equitable doctrines to modify the written terms of the plan, and the Supreme Court notes that in its opinion and then goes on to talk about O'Hara from the Eleventh Circuit, Schenck from the Eighth Circuit, and without going too extensively, Barco from the Seventh Circuit. All of these cases were decided after the vision case, by the way. So we're here in a situation now where, to illustrate the problem, this impacts the benefit structure of the plan. One of the purposes of a risk of preemption is to get a uniformity of application and procedure. As it stands now in Illinois, where we have a number of carpenters working, if Bishop applies and this decision is correct, the common fund doctrine is a problem. It's a problem in Missouri where the Eighth Circuit says if the plan document says you don't pay fees, you don't pay fees. I don't know what the story is in Kansas, and we pay medical bills, as is shown in an affidavit of the assistant administrator, throughout the United States. So we will have a crazy quill patchwork of what the rules are depending on where these claims come from and also depending upon where a lawsuit might be filed, and that's very unpredictable. There's another issue here. The plan became aware of Mr. Miller's accidental injuries when he applied for disability benefits, and at that point, and this is in the affidavit with Ms. Perez as well, the plan essentially said, Dara, wait a minute. We don't pay these bills unless you guys agree to follow the terms of the plan document. You've got to fill out our segregation questionnaire. You have to sign the segregation agreement right to reimbursement. Dara did both of those. In reliance on that, the plan then proceeded to pay the additional bills and not recover the bills that had been paid without knowledge of the accident, which it has a right to do under the terms of the plan document. So we then come to this lawsuit, and there is a second problem that is raised by Mr. Dara signing onto the terms of the plan document, which means now, as I understand it, that he has effectively converted this into a case involving the interpretation of the ERISA plan, which he's agreed to abide by, and that raises the specter of complete preemption under Section 1132, which is the second point that we made. But it all boils down to the Supreme Court in the U.S. Airways v. McCutcheon case saying that equitable doctrines cannot override the clear written terms of the plan document. They abrogated Rose. They reversed McCutcheon. In effect, they sustained Fargo, Shank, and the other cases that are mentioned in the opinion. And that's the essence of it. If you have questions, I'll be glad to respond to them. I don't believe so. Thank you, Counsel. Counsel? Good afternoon. Unfortunately, I'm Dara. I'm Lanny Dara, and I represent the law firm of Trent Kelly, NAPA, and DARA. Two things. I'm going to kind of jump around here. As the Court probably knows, this is a factual matter. When I filed suit under the Common Fund Act and quantum airway theory in state court, the Carpenters plan went to federal court and got an injunction against me from proceeding in state court. That was a TRO that became a permanent injunction, which then got appealed to the Seventh Circuit Court of Appeals. The Seventh Circuit Court of Appeals vacated the lower court's TRO. And when they vacated the TRO, I'm sorry, by the time it made it to the Seventh Circuit, it was a permanent injunction. When they vacated the injunction against the plaintiffs in this case, in the Seventh Circuit specifically stated, DARA's state common fund claim for attorney's fees is to remove from the core federal interest represented by ERISA to sustain an injunction under the Anti-Injunction Act. And if you'll remember, under the ERISA statute, before there can be preemption, it has to be related to a health and benefit welfare plan. And the Seventh Circuit itself, looking at our facts, has said my claim is not related to a health and welfare benefit plan. It's too tenuous. In fact, the Seventh Circuit went on to say DARA's common fund suit, although involving funds and finances, does not directly involve the finances, but does directly involve recovery of benefits. But, I'm sorry, does not directly involve recovery of benefits. So that was the other basis for them vacating the injunction against me. And so therefore, if you just follow what the Seventh Circuit has said in this particular case, you could, I mean, it's clear that it is not related to a health and welfare plan, and therefore there is no preemption under, we'll get to state law, but even under federal law, there is no preemption. As additional authority for this position, if you look at VARCO, the original VARCO case, which was cited by the Seventh Circuit, that's Wal-Mart v. VARCO, which is 338-FED-3, 680. There they said the common fund claim of an attorney, not a plan participant under Illinois law, is independent of the plan document. So it has nothing to do, my claim has absolutely nothing to do with this health and welfare fund benefit for which plaintiffs were of no party to and had no interest in. And in VARCO, what happened was the plaintiff's attorney charged his client a fee on the amount that was payable to the health and welfare plan. And the court said no, since that plaintiff's lawyer no longer has a stake in the outcome, there's no common fund claim anymore. What the court said was had he not paid or had he not taken an attorney's fee and he was an uncompensated party, he would have an independent, an individual claim which could proceed under the law. In this case, as everyone agrees, we did not charge Mr. Miller a fee on the approximately $90,000 that was paid back to the health and welfare fund. So plaintiffs should have come to that regard are uncompensated parties and they're asserting their own rights to recovery. They're not asserting any rights on behalf of Miller because Miller doesn't have any interest in this claim. Mr. Miller is not a party to this claim. Mr. Miller has stood by his obligations to the plan and paid back $90,000 which was paid out on his behalf. So they were made whole, the plan was, by Mr. Miller. What's clear is there is not, it is not necessary to interpret the health and welfare plan of the Carpenters to reach a conclusion in this case. The sole issue is whether or not an entity such as the Carpenters can sit back, reap the benefits of the labor of an attorney, and then waive its obligations under the common fund doctrine in quantum merit by saying, wait a minute, we entered into an agreement with our covered individuals that said you wouldn't charge us a fee. Well, that's not what the plan says. The plan says you cover attorney's fees, which is obligation to us. We don't get to deduct for the common fund doctrine, which Mr. Miller did not do in this case. Mr. Miller paid them back 100%. He did not attempt to take or he did not take any fees or attempt to deduct for those fees. Once again, this, the Illinois Supreme Court in this case has answered this issue twice, which is Bishop and Begaard and also Schopenhauer-Schneider, 1996 and 2002. And in both cases, the Illinois Supreme Court found that an attorney's claim is separate from those of a plan participant. And the attorney's fee is too tenuous and is unrelated to the plan to be preempted. In this case, the Carpenters have made no good face showing as to why Bishop and Schopenhauer has not or should be ignored. This is two Supreme Court precedents which are very close on point. The only difference is the fact that in those cases, the attorney did not pay back or the plan participant did not pay back the amount owed before his attorney sued the plan. And last, I'll try and wrap up here. The appellants raised the U.S. Airways case. As everybody who's read the case knows, that is not a quote for these facts because, once again, that was a claim between a plan participant and the plan. And whether or not they could apply the common fund doctrine when the plan was silent as to that issue. Once again, appellees in this case, or plaintiffs in this case, are not members of the plan. They're not fiduciaries of the plan. They have no interest in the plan. So what the obligations are of that plan are still relevant to the common fund claim now being asserted by Shrimp, Kelly, Knapp, and Dar. Accordingly, we would just ask that the court affirm the summary judgment finding of the lower court because there is no dispute in this case. There's no facts in dispute. Everyone agrees there's no facts in dispute. And the only dispute in this case is whether or not Judge Crowder applied the law correctly or incorrectly. I think after reviewing the Supreme Court authority in this case, it's clear that Judge Crowder applied the law appropriately, and therefore, her order should be affirmed. Thank you. Unless there's some questions. I'm just looking. Your position is what you signed with the plan was just an acknowledgment. It was an acknowledgment of Mr. Miller's obligations under the plan, which Mr. Miller fulfilled completely when he reimbursed the plan. Thank you. Counsel. And cancel that document, which he signed. Is that in the appendix that you submitted or? I believe it's in the record. Yes. Well, I'm sure it's in the record, but I wonder if it's in the appendix. Okay. Thank you. Thank you. First, with regard to the Seventh Circuit decision, what's required for the Anti-Injunction Act to not apply for an exception to the Anti-Injunction Act is not the same standard that applies to a preemption argument under ERISA, whether or not the state law relates to the plan. In fact, the Seventh Circuit went on to say that at the end of the trail, in effect, if we do not get this resolved satisfactorily, we can come back and bring a separate federal lawsuit and still assert our rights. And that may well happen. I hope it doesn't. But in any event, as far as Mr. Miller paying us, all the checks came from DAR. We haven't received a penny from Miller. DAR controlled the distribution of the funds, and they were handled in such a way that Mr. Miller has $270,000 instead of $240,000. Mr. DAR has his $170,000 either way under his theory of the case. And what he's trying to do is reduce the plans 90 to 60. Now, I don't know how to make it any clearer that that hits right at the benefit structure of a plan that covers about $40,000. And it's a self-funded plan, which means the money in the trust is all we have to pay bills. And that's the reason for this provision to recover from the third-party recovery what we've advanced so that we can use it to pay for someone else. What would be the incentive of an attorney to ever ask for medical fee, medical bills under your plan? Well, the terms of the plan document say regardless of whether it's medical bills or how you allocate it, it's a recovery from the third-party recovery. And in Mr. DAR's case, for instance, he's fully compensated with his $170,000. The issue is whether Mr. Miller gets $240,000 or $270,000 and whether the plan gets $90,000 or $60,000. And that's where the problem is that we have. But that's not true in every case. I mean, in the Varco case, the lawyer took it all and then the beneficiary tried to take her portion back to get reimbursed. And the court said no, it belongs to the attorney. But why would an attorney ever represent a plaintiff for medical bills? I mean, couldn't the attorney write the plan a letter saying, I'm not going to represent you for your bills, and we are only going to go for pain, suffering, disability, and disfigurement? Well, the recovery would still be subject to the reimbursement provision. But more importantly, if an attorney told us at the front end that I'm not going to do that, the plan would not advance benefits. It would just wait until it was resolved and see what was left of that. So the plan can sit back and reap the benefits of someone else's work without paying for it? The point of all of that, and it's clearly addressed in the U.S. Airways v. McCutcheon case, is if the contract between Mr. Miller and the plan, the plan document which Mr. Dar signed onto, says that we don't pay attorney's fees, that stands up. U.S. Airways- That's not exactly what U.S. Airways says. They don't hold that. I believe that's what the opinion says, but I may be wrong about that. But U.S. Airways also says if the plan is silent on that issue, then we'll import the common fund doctrine as part of federal common law. I agree with that. That's what they do. But it's one thing that is clear, and you keep telling us that is preemption is preemption, and ERISA is clearly preempted, preempts state law. That's not exactly true. You have complete preemption, and you have conflict preemption. That's true. And it's the conflict preemption if it relates to state law. If the matter relates to state law, which is the section we're talking about, I think, then there is preemption. Okay. So the Seventh Circuit, as I understand it in this case, has already determined that Mr. Dar's claim does not relate to the plan. So there would be no conflict preemption if you read the Seventh Circuit opinion. That's not what the Seventh Circuit said, Judge, with all due respect. And we'll read it. I just want to know if you agree with that. I disagree with that because the problem in the Seventh Circuit case was whether or not the federal court had sufficient basis to enjoin a state court action, and the Anti-Injunction Act was interpreted to say not on these facts, although the court also says in certain ERISA situations it could, but that was an Anti-Injunction Act case. That was not a federal preemption case, and we have two species of preemption here, conflict preemption under 514 where the plan says we don't pay, and then we also have now a 502 complete preemption because he signed on to the terms of the plan document. At least that's what Ms. Perez-Affidavit says, and that's what the plan understood, and that's the only evidence before the trial court. But whether it's construed as a contract or an acknowledgment is something that we have to decide. I believe that should have been decided at the trial court. It wasn't touched. Okay. Thank you so much. Thank you. Thank you, Counsel. We appreciate the brief and arguments of counsel to take the case under advisement. We are at recess until 1 o'clock.